**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------- x

MICHAEL FUNK,

      *Plaintiff*,

      v.

ROBERTS TRUCKING COMPANY,
LLC,

      *Defendant.*

---------------------------------------------------- x

Civil Action No.

_1:15cv286_____

**COMPLAINT**
**Jury Trial Demanded**

**Filed Electronically**

**COMPLAINT**

**Nature of the Action, Jurisdiction, and Venue**

1.      This is an individual action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.3(a), and Pennsylvania common law.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and, for the related state law claims, 28 U.S.C. § 1367(a).

3.      The events and occurrences underlying the claims asserted in this complaint occurred substantially in and around Erie, Pennsylvania, where Plaintiff worked and where Defendant has maintained a regular and continuous business presence during all relevant time periods.  This action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

4.      Prior to filing this action, Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") a charge of unlawful discrimination and discriminatory retaliation in violation of the ADA and the PHRA.  Plaintiff received a right-to-sue notice from the EEOC on or around August 31, 2015.

**Parties**

5.      **Plaintiff Michael Funk.**

a. Plaintiff Mike Funk is a former Mechanic of Defendant Roberts Trucking Company, LLC.

b. Plaintiff was hired by the Company as a Mechanic on or around May 24, 2010.

c. Plaintiff's last day of work for the Company was on or around January 12, 2015.

d. Plaintiff has resided at all relevant times in North East, Pennsylvania 16428.

6.      **Defendant Roberts Trucking Company, LLC ("Roberts Trucking" or the "Company").**

a. Roberts Trucking is a limited liability company organized under the laws of Pennsylvania with corporate registration number 3795993.

b. Roberts Trucking's administrative headquarters is located at 5501 Route 89, North East, Pennsylvania 16428.

c. Roberts Trucking provides logistics and transportation services, such as freight trucking, freight warehousing, and publication delivery.

d. Throughout Plaintiff's employment, Roberts Trucking sponsored a health insurance plan that was an employee welfare benefit plan within the meaning of ERISA, and Plaintiff was a beneficiary of that plan.

e. At all relevant times Roberts Trucking was an employer within the meaning of the ADA, the PHRA, and ERISA.

**Background**

7.      Plaintiff Mike Funk was born in 1959 and is currently 56 years old.

8.      Plaintiff was hired by Roberts Trucking as a Mechanic on or around May 24, 2010.

9.      Plaintiff worked primarily from Roberts Trucking's mechanic shop facilities located at 5501 Route 89, North East, Pennsylvania 16428.

10.      From May 24, 2010, until the termination of his employment, Plaintiff ably performed his duties as a Mechanic.

11.      On or around January 5, 2013, Plaintiff was dispatched to a rest area ramp on Interstate 90 to perform mechanic services on a Roberts Trucking customer's vehicle that was in need of service.

12.      In the course of performing those services, Plaintiff slipped and fell, injuring his right wrist.

13.      Plaintiff gave notice to Roberts Trucking managers of this January 2013 fall and injury.

14.      Managers of Roberts Trucking—specifically, Manager Rob Pratt, Manager Mike Wojnowicz, and Manager William Roberts—learned of the slip and fall incident and knew that Plaintiff had sustained an injury to his right wrist.

15.      In July 2013, Plaintiff began to obtain medical treatment from one of Roberts Trucking's company-specified healthcare providers.

16.      Around the same time, Plaintiff filled out paperwork with Roberts Trucking's human resources department concerning the January 2013 fall and injury (about which Plaintiff had already notified Roberts Trucking managers).

17.      Shortly thereafter, Manager William Roberts approached Plaintiff about the

January 2013 fall and Plaintiff's injury therefrom.

18.      Roberts instructed Plaintiff not to file a worker's compensation claim related to the incident.

19.      Roberts told Plaintiff that if Plaintiff did not file a worker's compensation claim, then Roberts Trucking would pay Plaintiff 75% of his normal salary during any time that Plaintiff needed to take off work because of the injury and also would pay for any out-of-pocket medical expenses Plaintiff incurred in seeking treatment for the injury.

20.      In reliance on Roberts' promises, Plaintiff did not file a worker's compensation claim with respect to the January 2013 incident.

21.      In the months after the January 2013 incident, Plaintiff continued to experience pain and discomfort in his right wrist.

22.      In October 2013, Plaintiff underwent an x-ray examination that revealed a chronic problem with Plaintiff's right wrist resulting from the January 2013 incident.

23.      On October 30, 2013, Doctor D. Patrick Williams issued a diagnosis regarding Plaintiff's right wrist and prescribed medical restrictions on the work that Plaintiff could perform at Roberts Trucking.

24.      Specifically, Dr. Williams prescribed that Plaintiff's duties be limited to "Light Duty" and that Plaintiff not be required to lift objects weighing more than 10 pounds with his right hand.

25.      Between October and December 2013, Plaintiff continued to work full time for Roberts Trucking.

26.      In early December, 2013, while doing repair work on a forklift in a Roberts Trucking warehouse, Plaintiff fell, further injuring his right wrist.

27.     Plaintiff told his managers that he'd fallen and further injured his right wrist.

28.     Plaintiff completed an injury report, dated December 18, 2013, related to this fall.

29.     Plaintiff also notified Manager Mike Wojnowicz about the fall, including how he'd fallen and the damage done to his right wrist.

30.     On or around December 25, 2013, Dr. Williams recommended that Plaintiff undergo arthroscopic surgery on his right wrist.

31.     In or around December 2013, consistent with William Roberts' promises, Plaintiff sought reimbursement for the out-of-pocket expenses he had incurred for medical treatment.

32.     Consistent with William Roberts' promises, Roberts Trucking issued a check payable to Plaintiff in the amount of approximately $800 to reimburse Plaintiff for the out-of-pocket expenses he had incurred for medical treatment up to that date.

33.     Plaintiff understood that Roberts Trucking made this payment in keeping with William Roberts' promise that, so long as Plaintiff did not file a worker's compensation claim, then Roberts Trucking would pay Plaintiff 75% of his normal salary during any time that Plaintiff needed to take off work because of the injury and also would pay for any out-of-pocket medical expenses Plaintiff incurred in seeking treatment for the injury.

34.     Plaintiff thus continued to refrain from filing a worker's compensation claim, in continuing reliance on William Roberts' promises.

35.     In March 2014 Plaintiff visited the University of Pittsburgh Medical Center for a scheduled arthroscopic surgery on his right wrist.

36.     Prior to making any incisions in Plaintiff's wrist, the doctor discovered complications that required rescheduling Plaintiff for a second surgery in April 2014.

37.     Before the April 2014 surgery, Plaintiff told Roberts Trucking that he would need

to take time off work to undergo the surgery.

38.     Before Plaintiff actually took time off work, Plaintiff received a phone call from William Roberts.

39.     William Roberts told Plaintiff that Roberts Trucking would not fulfill its prior promise to pay Plaintiff 75% of his normal salary during any time that Plaintiff needed to take off work because of the injury; William Roberts also told Plaintiff that Roberts Trucking would not honor its prior promise to pay for any medical expenses Plaintiff incurred in seeking treatment for the injury.

40.     William Roberts told Plaintiff that he should instead apply for unemployment compensation to obtain income during his time away from work, and that Roberts Trucking would not contest the unemployment compensation request.

41.     Plaintiff filed for unemployment compensation, and Plaintiff stated accurately in his unemployment compensation application that he was injured and could not work.

42.     The Pennsylvania Unemployment Commission denied Plaintiff's application for unemployment compensation because Plaintiff had stated (accurately) that he was injured and unable to work at that time.

43.     Plaintiff underwent surgery on his right wrist on or around April 24, 2014.

44.     Plaintiff underwent a second surgery on his right wrist on or around May 15, 2014.

45.     In the May 2014 surgery, the surgeon removed three bones from Plaintiff's right wrist.

46.     Following the May 2014 surgery, Plaintiff received a bill for the out-of-pocket expenses that Plaintiff owed for the May 2014 surgery.

47.     Roberts Trucking did not pay Plaintiff's surgery bills or reimburse Plaintiff for

those bills.

48.     Roberts Trucking also did not pay Plaintiff 75% of his salary while Plaintiff was

out of work for the surgeries.

49.     Plaintiff never received any wages from Roberts Trucking for the period of time he

took off work to undergo surgery on his right wrist.

50.     Plaintiff returned to work in or around July 2014 subject to the medical restrictions

that Plaintiff be limited to light duty and not be required to lift objects weighing more than 10

pounds with his right hand.

51.     Plaintiff clearly communicated these medical restrictions to his managers at

Roberts Trucking, both orally and by giving them copies of notes written by his doctors, which

spelled out the medical restrictions to which he was subject.

52.     Between July 2014 and January 2015, Plaintiff worked full time for Roberts

Trucking, subject to his medical restrictions.

53.     Notwithstanding his medical restrictions, Plaintiff had a full workload each week

that he worked for Roberts Trucking and continued to ably perform his duties as a Mechanic.

54.     On or around January 8, 2015, Plaintiff informed his supervisor, Mike Wojnowicz,

that Plaintiff's medical restrictions might be permanent.

55.     Four days later, on January 12, 2015, Mike Wojnowicz informed Plaintiff that he

did not need to come to work anymore.

56.     Plaintiff understood Manager Wojnowicz to be terminating Plaintiff's employment.

57.     Before he left the premises on January 12, Plaintiff met with Garrett Lyndahl, a

Human Resources manager for Roberts Trucking.

58.     During the meeting, Lyndahl told Plaintiff that the Company did not have any

positions that fit Plaintiff's medical restrictions.

59.     Plaintiff understood that his employment with Roberts Trucking had been terminated.

60.     Strangely, Lyndahl instructed Plaintiff to fill out an application for leave pursuant to the Family and Medical Leave Act ("FMLA").

61.     Plaintiff followed Lyndahl's instructions and filled out the FMLA paperwork.

62.     After January 12, 2015, Plaintiff continued to rehabilitate his right wrist and completed a physical examination to evaluate whether his existing medical restrictions could be lifted.

63.     On January 20, 2015, medical professionals at the offices of Orthopaedic and Sports Medicine of Erie performed a functional capacity evaluation ("FCE") on Plaintiff's right wrist.

64.     Based on the FCE, the medical professionals concluded that Plaintiff could return to work subject to limitations on his ability to lift heavy objects with his right arm.

65.     Plaintiff sent a copy of the FCE to Roberts Trucking.

66.     After January 12, 2015, Roberts Trucking treated Plaintiff as if he had been terminated from the company.

67.     Nobody at Roberts Trucking followed up with Plaintiff to see how his rehabilitation was progressing, nor did anyone from Roberts Trucking provide Plaintiff with updates with respect to his employment status with the company.

68.     In April 2015, Plaintiff contacted Roberts Trucking to inquire about the status of his coverage under the healthcare insurance plan that Roberts Trucking sponsored.

69.     On May 5, 2015, Garrett Lyndahl wrote Plaintiff an e-mail informing him that his healthcare coverage had expired at the end of Plaintiff's "12 weeks" of FMLA leave, which was

the middle of April, 2015.

70.     Mr. Lyndahl's e-mail did not include any reference to Plaintiff's employment status with Roberts Trucking.

71.     Plaintiff asked for confirmation that he had been terminated by Roberts Trucking.

72.     The next day (May 6, 2015), Mr. Lyndahl sent Plaintiff another e-mail, in which Lyndahl stated:  "Your FMLA has expired.  That means that Roberts is released from our obligation of holding your job and continuing your insurance."

73.     The e-mail further stated, with respect to Plaintiff's employment, "when you are released from all doctor care and are allowed to return to your prior duties, you have the opportunity of reapplying for a position at Roberts."

74.     The message in Lyndahl's e-mail was entirely clear:  There is no place for disabled workers at Roberts Trucking, and Roberts Trucking has a policy of non-accommodation.

**Count I:  Violation of the Americans with Disabilities Act – Failure to Accommodate**

29 U.S.C. § 12112(a)

75.     Plaintiff incorporates the preceding paragraphs of this complaint as though the same were set forth fully herein.

76.     Plaintiff is a disabled person within the meaning of the ADA—specifically, the injuries Plaintiff suffered to his right wrist substantially limit one or more of Plaintiff's major life activities; and Roberts Trucking regarded Plaintiff's wrist injury as substantially limiting one or more of Plaintiff's major life activities.

77.     Plaintiff made a request for an accommodation of his disability.

78.     Roberts Trucking had an affirmative duty to engage in the interactive process with Plaintiff to make a reasonable accommodation of Plaintiff's disability.

79.     Roberts Trucking did not engage in the interactive process with Plaintiff and refused to accommodate Plaintiff's disability.

80.     With a reasonable accommodation, Plaintiff could have performed the essential functions of his job as a Mechanic.

81.     In addition, with or without a reasonable accommodation, Plaintiff could have performed the essential job functions of available positions at Roberts Trucking that involved, for example, mechanic work, maintenance work, safety inspections, and truck driving.

82.     Plaintiff suffered substantial damages because of Roberts Trucking's refusal to accommodate his disability.

83.     Under the ADA, Plaintiff seeks to recover an amount equal to his lost wages, lost benefits, and compensatory damages, plus reasonable attorneys' fees, litigation costs, and interest.

**Count II:  Violation of the Americans with Disabilities Act – Discriminatory Discharge**

29 U.S.C. § 12112(a)

84.     Plaintiff incorporates the preceding paragraphs of this complaint as though the same were set forth fully herein.

85.     Plaintiff is a disabled person within the meaning of the ADA—specifically, the injuries Plaintiff suffered to his right wrist substantially limit one or more of Plaintiff's major life activities; and Roberts Trucking regarded Plaintiff's wrist injury as substantially limiting one or more of Plaintiff's major life activities.

86.     Managers of Roberts Trucking knew that Plaintiff was a disabled person.

87.     Plaintiff suffered adverse employment actions—specifically, Plaintiff was forced to apply for leave under the Family and Medical Leave Act and Plaintiff's employment was terminated.

88.     Roberts Trucking took the adverse employment action against Plaintiff because Plaintiff was disabled.

89.     With a reasonable accommodation, Plaintiff could have performed the essential functions of his job as a Mechanic.

90.     In addition, with or without a reasonable accommodation, Plaintiff could have performed the essential job functions of available positions at Roberts Trucking that involved, for example, mechanic work, maintenance work, safety inspections, and truck driving.

91.     Plaintiff suffered substantial damages as a result of the adverse employment action.

92.     Under the ADA, Plaintiff seeks to recover an amount equal to his lost wages, lost benefits, and compensatory damages, plus reasonable attorneys' fees, litigation costs, and interest.

## COUNT III:  Violation of the Employee Retirement Income Security Act – Unlawful Interference (Section 510)

29 U.S.C. § 1140

93.     Plaintiff incorporates by reference the preceding paragraphs of this complaint as though the same were set forth fully herein.

94.     Plaintiff was an employee of Roberts Trucking within the meaning of ERISA.

95.     Roberts Trucking sponsored an employee health plan for its employees, including Plaintiff, and that plan was an employee welfare benefit plan within the meaning of ERISA.

96.     Plaintiff was a beneficiary of the plan.

97.     Roberts Trucking terminated Plaintiff's employment for the purpose of interfering with Plaintiff's further attainment of benefits under the plan.

98.     Plaintiff suffered substantial damages as a result of Roberts Trucking's unlawful interference with Plaintiff's ERISA benefits.

99.     Roberts Trucking's actions violated Section 510 of ERISA, 29 U.S.C. § 1140.

100.    Under ERISA, Plaintiff seeks all available legal and equitable relief.

### Count IV:  Breach of Contract

101.    Plaintiff incorporates by reference the preceding paragraphs of this complaint as though the same were set forth fully herein.

102.    Between July and December 2014, Roberts Trucking (through Manager William Roberts) offered Plaintiff a bilateral contract on the following terms:  If Plaintiff agreed not to file a worker's compensation claim based on the January 2013 incident, then Roberts Trucking would pay Plaintiff 75% of his normal salary during any time that Plaintiff needed to take off work because of the injury and also would pay for any medical expenses Plaintiff incurred in seeking treatment for the injury.

103.    William Roberts made this offer on behalf of Roberts Trucking.

104.    Plaintiff accepted the terms of this agreement, both orally and by performance, and followed through on his end of the bargain by refraining from filing a claim for worker's compensation based on the January 2013 incident.

105.    Plaintiff's agreement not to file a worker's compensation claim constituted valuable consideration for Roberts Trucking's promise to pay 75% of Plaintiff's normal salary and to pay Plaintiff's costs of treatment.

106.    Roberts Trucking breached the agreement when the company failed to pay Plaintiff 75% of his normal salary during all weeks when he was off work due to the injury, and when the company failed to pay Plaintiff's out-of-pocket costs of treatment for the injury.

107.    As a result of the Company's breach, Plaintiff has suffered substantial damages in the form of the unpaid wages, the unpaid out-of-pocket costs of treatment, and any damages flowing from Plaintiff's not filing a claim for worker's compensation in reliance on Defendants'

promises.

108.    Plaintiff is entitled to recover all of these damages for breach of contract under Pennsylvania common law.

### Count V:  Pennsylvania Wage Payment and Collection Law

109.    Plaintiff incorporates by reference the preceding paragraphs of this complaint as though the same were set forth fully herein.

110.    As stated above in the claim for breach of contract, Roberts Trucking was obligated to pay Plaintiff 75% of his normal salary during any time that Plaintiff needed to take off work because of the injury and also would pay for any medical expenses Plaintiff incurred in seeking treatment for the injury.

111.    Those contractual obligations constitute wages and/or wage supplements within the meaning of the WPCL.

112.    Roberts Trucking violated the WPCL by failing to pay the wages and/or wage supplements owed to Plaintiff.

113.    Roberts Trucking did not have any good-faith basis on which to withhold the wages and wage supplements.

114.    Plaintiff is entitled to recover the unpaid wages and wage supplements as well as statutory penalties (25% of unpaid wages and wage supplements), pre-judgment and post-judgment interest, attorneys' fees, and costs.

### Count VI:  Promissory Estoppel

115.    Plaintiff incorporates by reference the preceding paragraphs of this complaint as though the same were set forth fully herein.

116.    Between July and December 2013, William Roberts promised that Roberts

Trucking would pay Plaintiff 75% of his normal salary during any time that Plaintiff needed to take off work because of the injury and also would pay for any medical expenses Plaintiff incurred in seeking treatment for the injury.

117.    When Williams Roberts made this representation, Williams Roberts acted as an agent of Roberts Trucking and had actual and apparent authority to bind the Company.

118.    William Roberts knew or reasonably should have expected that Plaintiff would rely on these promises.

119.    Plaintiff did in fact rely on these promises when Plaintiff elected not to file a claim for worker's compensation.

120.    Plaintiff suffered substantial damages as a result of his reliance on the representations and Roberts Trucking's failure to honor the promises made by William Roberts.

### Count VII:  Invasion of Privacy - Appropriation of Name or Likeness

121.    Plaintiff incorporates by reference the preceding paragraphs of this complaint as though the same were set forth fully herein.

122.    After Plaintiff was terminated from Roberts Trucking, Roberts Trucking advertised open mechanic positions and requested applications for those positions.

123.    One of the ways in which Roberts Trucking advertised open mechanic positions was through television commercials aired on Channel 12 in the Erie area.

124.    One such television commercial displayed Plaintiff, in his Roberts Trucking uniform, doing repair work on a vehicle.

125.    In addition, Roberts Trucking used Plaintiff's likeness in a job advertisement placed on Roberts Trucking's profile page on the online website Facebook.

126.    Roberts Trucking did not have Plaintiff's consent to use Plaintiff's likeness in the

14

television commercial or the Facebook posting.

127.    Roberts Trucking knew that it did not have Plaintiff's consent to use Plaintiff's likeness in the television commercial or the Facebook posting.

128.    Roberts Trucking used Plaintiff's likeness in the television commercial and the Facebook posting for Roberts Trucking's own commercial benefit.

129.    Plaintiff has suffered substantial damages as a result of Roberts Trucking's unlawful use of Plaintiff's likeness, including reputation damages and mental pain and suffering.

130.    Plaintiff is entitled to an injunction prohibiting Roberts Trucking from using Plaintiff's likeness in any television commercial or other advertising medium (including Facebook) without Plaintiff's consent, and Plaintiff is further entitled to recover punitive damages for Roberts Trucking's intentional invasion of Plaintiff's privacy.

**Prayer for Relief**

131.    WHEREFORE, Plaintiff respectfully requests that this Court:

a.  order Defendant to pay compensatory damages to Plaintiff;

b.  order Defendant to pay reliance damages to Plaintiff;

c.  order Defendant to pay consequential damages to Plaintiff;

d.  order Defendant to pay the litigation costs and reasonable attorneys' fees incurred by Plaintiff, as well as pre- and post-judgment interest;

e.  order Defendant to refrain from using Plaintiff's likeness in any television commercial without Plaintiff's consent;

f.  order Defendant to pay punitive damages to Plaintiff for Defendant's invasion of Plaintiff's privacy; and

g.  grant such further relief as the Court deems necessary and proper.

**<u>Demand for Jury Trial</u>**

132.    Plaintiff requests a jury trial on all issues raised in the complaint.


Respectfully submitted,

<u>s/ Joseph H. Chivers</u>

Joseph H. Chivers, Esq. (PA 39184)
100 First Avenue, Suite 1010
Pittsburgh, PA 15222-1514
jchivers@employmentrightsgroup.com
(412) 227-0763 / (412) 281-8481 (FAX)
*Counsel for Plaintiff*


Dated:  November 28, 2015